UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

HENRY VEGA,

                Petitioner,

-against-

JAMES WALSH,

                Respondent.

----------------------------------------------------------------X

06-cv-6492 (ARR)(JO)

<u>NOT FOR PRINT
OR ELECTRONIC
PUBLICATION</u>

OPINION AND ORDER

ROSS, United States District Judge:

      Petitioner Henry Vega brings the instant action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The court has received the Report and Recommendation ("R&R") on the instant case dated April 22, 2010 from the Honorable James Orenstein, United States Magistrate Judge. Petitioner timely filed objections to the R&R dated May 6, 2010, and respondent filed a response dated May 17, 2010. Petitioner objects the Magistrate Judge's findings that (1) evidence of petitioner's uncharged crimes was either properly admitted or its admission did not rise to the level of a due process violation; (2) that the testimony of the medical examiner did not violate petitioner's rights under the Confrontation Clause; and (3) that following a reconstruction hearing, the prosecutor provided non-pretextual, race-neutral reasons for his peremptory challenges.

      The parties' familiarity with the factual and procedural background of the petition, which is thoroughly recited in the R&R, is assumed. Following a *de novo* review, this court adopts the Report and Recommendation as the Decision and Order of this court.

1

# DISCUSSION

I. <u>Admission of Petitioner's Uncharged Crimes and Tattoo</u>

Petitioner argues that the Magistrate Judge erred in finding that no constitutional violation occurred by the admission of evidence of petitioner's drug activity, his possession of handguns, and his tattoo. Specifically, petitioner claims that the trial court improperly admitted (1) evidence of his distribution of marijuana and cocaine, (2) evidence of an agreement to commit a murder and recruit witness Christopher Flores in the execution of that murder, (3) evidence that he possessed handguns and was observed going into the area of his apartment where he kept weapons at the time of the homicide, and (4) evidence of his "enforcer" tattoo. Petitioner primarily argues that the evidence should have been excluded because the prejudice of the evidence clearly outweighs any probative value. (Pet.'s Objections at 2.)

There is a "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts," unless the error was so pervasive that the criminal defendant was denied a fundamentally fair trial. <u>Crane v. Kentucky</u>, 476 U.S. 683, 689-90 (1986); <u>see also</u> <u>Collins v. Scully</u>, 755 F.2d 16, 18 (2d Cir. 1985). To warrant relief on due process grounds, the uncharged crimes evidence in question must be "so extremely unfair that its admission violates fundamental conceptions of justice." <u>Dunnigan v. Keane</u>, 137 F.3d 117, 125, <u>cert. denied</u>, 525 U.S. 840 (1998) (quoting <u>Dowling v. United States</u>, 493 U.S. 342, 352 (1990)). Further, it must be "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it. In short, it must have been crucial, critical, highly significant." <u>Collins</u>, 755 F.2d at 19 (internal quotation and citation omitted). Moreover, even if admission of the evidence is an error of constitutional dimension, habeas relief is only appropriate when the error has a "substantial and injurious effect or

2

influence in determining the jury's verdict." McCarthy v. Phillips, 2009 WL 3204660, at *14 (E.D.N.Y. 2009) (quoting Brecht v. Abrahamson, 507 U.S. 619, 623 (1993)). In determining whether an error had a substantial and injurious effect, "the principal factors to be considered are the importance of the witness's wrongly admitted testimony, and the overall strength of the prosecution's case." Wray v. Johnson, 202 F.3d 515, 526 (2d Cir. 2000) (citations omitted).

Despite petitioner's objections, I find that the Magistrate Judge was correct in his determination that evidence of petitioner's drug activity was relevant to prove petitioner's motive for committing the charged murder and to explain the relationship between petitioner and the testifying witnesses.

With respect to evidence of petitioner's gun possession, petitioner argues that evidence that he kept guns and gun magazines in his bedroom should not have been admitted given that Szamble could not affirm that she had seen petitioner possess one of the guns at the time in question and could not establish through the "shaky nature" of the time frames how recently before the incident she had observed guns on the premises. (Pet.'s Objections at 2.) However, Szamble testified that in early November 1996, the night before petitioner told her that he had "broken Al in," she saw petitioner remove an object from a drawer where she had previously seen guns. (Szamble Test., Trial Tr. at 884-86.) Such evidence is sufficiently linked in time and probative of means and opportunity to commit the murder, and the "shaky nature" of Szamble's testimony is relevant only to her credibility and the weight of the evidence, not its admissibility.

Petitioner also objects to the Magistrate Judge's finding with respect to the admission of evidence of petitioner's attempt to recruit Flores to participate in an unrelated bogus mafia "hit," on the grounds that the evidence was pure propensity evidence and was "outrageously prejudicial." (Pet.'s Objections at 10.) While the Magistrate Judge did call admission of this

3

evidence a "closer call," he did find that the trial court had discretion to admit the evidence to allow the jury to assess Flores' testimony about Vega's statements concerning the murder of Hill. (R&R at 12.) Additionally, as the respondent notes, Flores testified that it was during the discussion of the "hit" that petitioner told Flores that he and his co-defendant had killed "Tommy" who Flores understood to be the victim Tommy Hill. (Flores Test., Tr. Transcript at 975-76.) Additionally, while the similarity between the charged crime and the bogus mafia "hit" does have potential prejudicial effect, the trial court's charge to the jury stated that petitioner's past acts were only to be considered to establish the relationship between petitioner and the testifying witness. Tr. Transcript at 1232; See, e.g., People v. Asai, 888 N.Y.S.2d 617, 621 (App.Div. 2009); People v. Doyle, 852 N.Y.S.2d 433, 437 (App.Div. 2008) ("Additionally, [the] County Court gave proper and appropriate limiting instructions to the jury concerning the permissible uses of this evidence thus limiting its prejudicial effect.").

Even if evidence of the mafia "hit" and petitioner's "enforcer" tattoo should not have been admitted, petitioner has not shown that in light of the additional evidence before the jury, that admission of the challenged evidence was "so extremely unfair that its admission violates fundamental conceptions of justice." Dunnigan, 137 F.3d at 125. Petitioner objects on the grounds that evidence against petitioner was not overwhelming, stating that the testimony of Szamble, Andujar, and Flores was unconvincing. (Pet.'s Objections at 19.) However, any inconsistencies in the witnesses' testimony or motivations to fabricate testimony were before the jury and weighed accordingly. See Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir.1996) (finding that "assessments of the weight of the evidence or the credibility of witnesses are for the jury" and thus a habeas court will "defer to the jury's assessments of both of these issues") (citations omitted); Rosa v. Herbert, 277 F.Supp.2d 342, 347 (S.D.N.Y. 2003) ("the court must defer to the

jury's assessments of the weight of evidence and the credibility of witnesses"); Fagon v. Bara, 717 F.Supp. 976, 979-80 (E.D.N.Y. 1989) ("this court is not free to make credibility judgments about the testimony ... or to weigh conflicting testimony") (citations omitted). Additionally, "guilt beyond a reasonable doubt may be established entirely by circumstantial evidence, . . . and this evidence must not be reviewed piecemeal, but rather as a whole." Maldonado, 86 F.3d at 35 (internal citations omitted).

As the Magistrate Judge noted, given that petitioner had twice confessed to two separate witnesses, and the content of these admissions were corroborated by the medical examiner's testimony, R&R at 14, I cannot find that the challenged evidence provided "the basis for conviction" or "remove[d] a reasonable doubt that would have existed on the record without it." Collins, 755 F.2d at 19.

Accordingly, I adopt the findings of the Report and Recommendation with respect to the admission of petitioner's uncharged crimes and tattoo.

II. Testimony of the Medical Examiner

Petitioner also objects to the R&R with respect to petitioner's Confrontation Clause claim. Petitioner argues that the testimony of Dr. Kari Reiber concerning the results of an autopsy she did not perform violated his Sixth Amendment right to confront his accusers, and argues that the Magistrate Judge erred in finding that Melendez-Diaz v. Massachusetts, 129 S.Ct. 2527 (2009) was a "new rule," and not retroactively applicable to petitioner. (Pet.'s Objections at 23.) For the reasons set forth below, I adopt the finding of the Magistrate Judge that Melendez-Diaz is a new rule not made retroactively applicable to petitioner.

5

The Supreme Court has said that "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government." Teague v. Lane, 489 U.S. 288, 301 (1989) (citations omitted). "To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." Id. In Melendez-Diaz, the Court held that the admission of "certificates of analysis" as evidence of the nature and quantity of the suspected narcotics in the trial of the defendant violated his Sixth Amendment right to confront the witnesses against him, as the certificates were within the core class of testimonial statements covered by the Confrontation Clause. 129. S. Ct. at 2532. While the majority characterized its decision as a "straightforward application of . . . Crawford," 129 S.Ct. at 2533, involving "little more" than an application of its holding, id. at 2542, such a statement does not foreclose a finding that the Court announced a "new rule." See Butler v. McKellar, 494 U.S. 407, 415 (1990) ("the fact that a court says that its decision . . . is 'controlled' by a prior decision is not conclusive" on the issue of whether a particular rule is "new" under Teague). As Judge Orenstein noted, the dissent in Melendez-Diaz found it to be a decision that "sweeps away an accepted rule governing the admission of scientific evidence," and "undoes" a "rule [that] has been established for at least 90 years." Id. At 2543 (Kennedy, J. dissenting). Furthermore, the number of courts that found laboratory reports and similar forensic analysis to be non-testimonial following Crawford suggests that reasonable jurists differed on the application of Crawford to the evidence at issue in Melendez-Diaz, and thus the decision in Melendez-Diaz was not a simple application of Crawford. See, e.g., United States v. Ellis, 460 F.3d 920 (7th Cir. 2006) (finding that medical records establishing presence of methamphetamine in defendant's system were non-testimonial business records); State v. O'Maley, 932 A.2d 1 (N.H. 2007) (analysis of blood tests taken of defendant by analyst were not

6

testimonial); State v. Forte, 629 S.E.2d 137 (N.C. 2006) (DNA analysis); State v. Dedman, 102 P.3d 628 (N.M. 2004) (blood alcohol analysis); Pruitt v. State, 954 So.2d 611 (Ala. Crim. App. 2006) (certificate of drug analysis); People v. Meekins, 828 N.Y.S.2d 83 (N.Y. App. Div. 2006) (DNA analysis); People v. Johnson, 121 Cal.App.4th 1409, 1411-1413 (2004) (finding that laboratory report is routine documentary evidence that does not violate the Confrontation Clause); State v. Thackaberry, 95 P.3d 1142 (2004) (laboratory report of urinalysis was "analogous to-or arguably even the same as-a business or official record").

Judge Orenstein also noted that even if petitioner were able to take advantage of the rule in Melendez-Diaz, the court must still apply United States v. Feliz, 467 F.3d 227, 231 (2d Cir. 2006), which was not explicitly overruled by Melendez-Diaz or a subsequent holding of the Second Circuit. Though Feliz was certainly called into question by Melendez-Diaz, I am unable to find, without a contrary ruling from the Second Circuit, that the Feliz court's finding that autopsy reports are non-testimonial is completely untenable. See, e.g., Comment, Toward a Definition of "Testimonial": How Autopsy Reports Do Not Embody the Qualities of a Testimonial Statement, 96 Cal. L.Rev. 1093, 1094, 1115 (2008) (noting, pre Melendez-Diaz, that every court post-Crawford has held that autopsy reports are not testimonial, and warning that a contrary rule would "effectively functio[n] as a statute of limitations for murder").

Accordingly, I adopt the finding of the Magistrate Judge that Melendez-Diaz announced a new rule that was not made retroactively applicable to petitioner. Petitioner's Confrontation Clause claim is thus denied.

III. Petitioner's Batson Claims

Finally, petitioner objects to the Magistrate Judge's finding that while petitioner did demonstrate that the state courts unreasonably applied Batson at his trial and on appeal, the prosecutor's explanations at the October 2009 reconstruction hearing as to why he struck jurors were non-pretextual and credible.

As the government notes, the Magistrate Judge's credibility determination is entitled to considerable deference. See Jordan v. Lefevre, 293 F.3d 587, 594 (2d Cir. 2002) ("Once reconstruction has been determined to be feasible, we will accord deference to the reconstructing court's credibility assessments."). Additionally, petitioner made verbatim arguments with respect to prospective jurors Roldan and Francisco to Judge Orenstein following the reconstruction hearing in his Post Hearing Memorandum, (Dkt. No. 27, at 15-18), which were addressed in the R&R. (R&R at 24-27.) Having reviewed the reconstruction hearing and Judge Orenstein's findings following the hearing, I agree that prosecutor had non-pretextual, race neutral reasons for each of his peremptory challenges, including for prospective jurors Roldan and Francisco. Accordingly, I adopt the portion of the R&R with respect to petitioner's Batson claims.

**CONCLUSION**

For the reasons set forth above, I adopt Magistrate Judge Orenstein's Report and Recommendation, dated April 22, 2010, as the opinion of the Court. See 28 U.S.C. § 636(b)(1). Accordingly, the petition for a writ of habeas corpus is denied. Because petitioner has not made a substantial showing of the denial of a constitutional right with respect to his claim regarding admission of his uncharged crimes and his Batson claim, a certificate of appealability will not

8

issue as to those claims. See 28 U.S.C. § 2253(c)(2). A certificate of appealability is granted with respect to the sole issue of petitioner's Confrontation Clause claim. The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.

S/Judge Ross
_____
Allyne R. Ross
United States District Judge

Dated:      May 28, 2010
               Brooklyn, New York

Service List:

Counsel for Petitioner:
Martin Michael Lucente
Legal Aid Society
Criminal Appeals Bureau
199 Water Street
Fifth Floor
New York, NY 10038

Respondent:
Merri Turk Lasky
Queens County District Attorney
125-01 Queens Boulevard
Kew Gardens, NY 11415

Cc: Judge Orenstein